We'll now hear argument in Case 11-192, United States v. Bormes. Mr. Srinivasan. Thank you, Mr. Chief Justice, and may it please the Court. This Court's decisions have long established that Congress will be deemed to have waived the government's sovereign immunity only if it unequivocally expresses its intent to do so. Under your view, is there any situation today where the Tucker Act would be applied to a statute? Because if we start with the statute, which always seems to be where you're pointing us to, and we're only looking for a clear waiver of sovereign immunity, then there will never be another Tucker Act action in the future. There are such statutes, Justice Sotomayor. Of course, this Court's What would they look like to be able to get around our clear statement rule? Well, they would have two features consistent with this Court's decisions that have found the Tucker Act to be applicable. One would be that the statute does not contain its own remedial mechanism, and the second would be that the substantive obligations in the statute run against the United States and the United States alone. And an example of that type of statute is the one that this Court found to be supported by the Tucker Act in White Mountain Apache Tribe or in Mitchell II. Those are the kinds of statutes as to which I think the Tucker Act was meant to apply. So basically, I'm not sure why we're even addressing the issue of Tucker Act jurisdiction. We should have really just been briefing the issue of whether the statute at issue here waived sovereign immunity. Well, of course the Because that becomes to you the operative question. It does when you're dealing with a statute like this. And of course, the reason that we're addressing Tucker Act immunity is because Tucker Act immunity is the basis for jurisdiction in this case, according to the reasoning of the Federal Circuit. And the problem with the reasoning of the Federal Circuit is it allows the litigant to readily circumvent the Court's strict test for sovereign immunity waivers by the straightforward device of adding the Tucker Act as a jurisdictional basis in the complaint. And it's not at all clear why a plaintiff couldn't do that for any claim under any statute, including a statute as to which this Court would have already concluded that the unequivocal expression test, the standard test applied for waivers of sovereign immunity, was not satisfied. And to give the Court a concrete example of this, in Lane v. Pena, the Court had concluded that for Rehabilitation Act claims under Section 504 of the Rehabilitation Act, there was no unequivocal expression of an intent to waive sovereign immunity by Congress for purposes of damages claims. And therefore, a damages claim can't be brought against the United States under Section 504. But under the Federal Circuit's approach, there's no apparent reason why a plaintiff couldn't bring a damages claim against the United States for a violation of Section 504 of the Rehabilitation Act by adding the Tucker Act to the jurisdictional basis in the complaint. Because if the plaintiff were able to do that, notwithstanding this Court's decision in Lane v. Pena, the result would be that the plaintiff could say, the Federal Circuit, you should look at the statute and ask the question whether it can be fairly interpreted to mandate the payment of money by the government. There's no unequivocal expression of an intent to waive sovereign immunity, but that doesn't detract from the ability of the Federal Circuit to conclude that the statute nonetheless can be fairly interpreted to mandate the payment of money. Now, of course, if that issue were to arise, we would make the argument that the statute can't be so read. But the possibility that a plaintiff could make that argument, notwithstanding this Court's decision in Lane v. Pena, we think reinforces the need to conclude that the Tucker Act can't be applied in the way that the Federal Circuit sought to apply it here. Sotomayor, could I ask you? I'm sorry. I was going to ask, following up on my question. Many courts have held that the FLSA has an express waiver of sovereign immunity. And many of them have recognized, if not all, a Tucker Act remedy. Under your new approach, that holding is incorrect, I presume. Because the FLSA has its own remedial scheme. I think one way to look at the FSLA, if we were looking at it in the first instance, would be to conclude that the FLSA itself has a waiver of sovereign immunity. And so you wouldn't look to the Tucker Act as the basis for the waiver of sovereign immunity, and you would look at the FSLA in the way that we think you should look at FCRA, the Fair Credit Reporting Act or FCRA. Now, Your Honor is correct that there is a body of court of claims jurisprudence that doesn't necessarily view the statute in that way. But if you apply the framework that we think is the correct one to apply, as we set forth in our brief, you might reach the same conclusion under the Fair Labor Standards Act, although under a slightly different route. Sotomayor, but then the Federal Circuit has no jurisdiction over those claims, according to you. Because the waiver is in the FLSA. It has its own judicial remedy. They are not authorized, then, to go to the Federal Circuit. Well, it would depend. There is a little bit of an anomaly in the FLSA, because the FLSA doesn't necessarily point to any particular court as is the basis of jurisdiction. It has the same language as here. You can bring your suit in any Federal or State court of competent jurisdiction. Right. It says in any Federal or State court of competent jurisdiction. But this statute specifically allows for claims to be brought in district courts and a court of competent jurisdiction. So one way. I don't see the difference between the two. Well, I think one way to potentially see the difference, and I'm not going to quibble with what Your Honor is saying, but one way to potentially see the difference is because the FLSA only refers to courts of competent jurisdiction, it doesn't have a freestanding provision that refers to district courts, it's possible to read that statute as essentially incorporating the Tucker Act as setting forth what the court of competent jurisdiction would be. Here, 1681p, which is set forth at 13a and 14a of the appendix to the government's brief, speaks specifically about actions being brought under FCRA in any appropriate United States district court, and then only it goes on to talk about or in any other court of competent jurisdiction. So that's a potential basis for drawing a distinction between the two. Kagan, Mr. Srinivasan, what you say has a good deal to recommend it, and it's basically, you know, why should we read the Tucker Act to reverse everything that we know about sovereign immunity. But it's really hard to get that from the text of the Tucker Act. In fact, I mean, I guess my question is, do you have any textual argument for the result that you're asking us to reach? Srinivasan Sure, I do, Your Honor. The text of the Tucker Act, it's true. If you read the text to apply it to its full potential reach, then the argument would be more difficult. But the text of the Tucker Act has never been read that way, including by this Court itself, starting with Nichols v. United States. Kagan Well, that's not really a textual argument. That's an argument about how we've sensibly limited the reach of the Tucker Act. But the Tucker Act does seem to include what your friend there says it includes. Srinivasan Well, I guess Kagan Any statute. Not any statute except the ones with remedial provisions, but just any statute. Srinivasan Sure. I guess you – if you read the Tucker Act to its full textual reach, I think we'd have a more difficult case. But our argument is that when the statute refers to claims founded on any act of Congress, it was never intended to apply literally to any conceivable act of Congress. And, in fact, this Court's own test for money mandating, the money mandating test that applies to the Tucker Act embodies that understanding. Scalia I assume you're appealing to the textual principle that the specific governs the general. Isn't that what's going on here? Srinivasan We're appealing to the Scalia The Tucker Act is a more general provision, and you're saying it's overcome by a more specific provision that provides for compensation but excludes the Federal Government. Srinivasan We're certainly relying on that, Justice Scalia, when you're asking whether the Tucker Act can be used as the basis for waiving sovereign immunity for claims under the Fair Credit Reporting Act. So when you bring the Fair Credit Reporting Act into play, yes, we're absolutely relying on the specific versus the general proposition, as this Court has relied on in any number of cases. I guess I understood Justice Kagan's question to be talking about the Tucker Act and the Tucker Act alone without bringing into play any other statute. Now, I take Your Honor's point that it's hard to conceive of the Tucker Act in that kind of isolated fashion, because usually you'll be asking the question whether a claim can be brought against the United States under some other statutory regime. And so if that statutory regime includes its own remedial mechanism, as FCRA does, it's hard to avoid resort to the specific controls of the general proposition. Now, the other point about construing the text of the Tucker Act alone is that the Tucker Act is a waiver of sovereign immunity. And so the canon that we construe waivers of sovereign immunity strictly comes into play when we construe the terms of the Tucker Act itself. And I think it stands to reason that when you apply that canon, you wouldn't read the Tucker Act to encompass fully any act of Congress, because the implications for waivers of sovereign immunity would be quite substantial. And so the Court has never construed the Tucker Act that way, and it shouldn't countenance that kind of construction now, which is effectively what the Federal Circuit's interpretation allows, because rather than applying the strict standard under which Congress would have to be seen to have unequivocally expressed an intent to waive the government's sovereign immunity in the terms of FCRA, it allows a plaintiff to avoid that by simply resorting to the Tucker Act in the jurisdictional basis of a complaint and getting them relaxed by the Federal Circuit's own description standard that applies to the Tucker Act. Ginsburg. The United States is governed by the substance of the Credit Reporting Act. The Act applies to the government, but your point is there's no sanction for noncompliance, even though the United States, the pay government system, is supposed to conform to the standards in the Act. Well, I guess a few responses, Justice Ginsburg. First, on the question of whether the United States is subject to the substantive obligations in FCRA, I don't know that there's a one-size-fits-all answer. I think you'd have to go provision by provision and make an assessment. And the reason I would say that is that with respect to certain provisions at least, there are other statutes that, depending on the provision, have a specific obligation against the government. And I'm thinking in particular of the Debt Collection Improvements Act, the Privacy Act in certain contexts. And so you'd have to ask the question whether, with respect to the particular FCRA provision that's alleged to run against the United States, would the better basis for finding the United States' obligations be some other statute that speaks more specifically to the question. So I'm resisting the notion that FCRA's references to persons in all of its substantive obligations would necessarily encompass the government. Now, there's at least one provision as to which we don't deny that the government is covered, and that's 1681BB. And that provision is set forth at pages — at page 7A of the appendix to the government's brief. And with respect to the particular provision at issue in this case, the truncation provision, I guess we don't have to confront the question of whether the government is bound by that provision.  It acts as if it's in compliance with that provision because it has to. There's a series of network agreements that the government has entered into with credit card companies that allow the government to participate in the credit card system. As a condition— Scalia. But 1681BBBB, you said? Where is that? Chastaner. 1681BB, if you look at— Scalia. You said 7A. I don't— Chastaner. Well, I'm sorry. It starts at 4A. And the — at 4A, permissible purposes of government's reports. Be conditions for furnishing. And then if you go to 7A, that's also part of BB. Okay. BB4 has an exception for national security investigations, and it talks at BB4A about in the case of an agency or department of the United States government which seeks to obtain and use. And because there's a reference to the United States government in that provision, it stands to reason that the term person in BB, which starts at 4A, excuse me, encompasses the United States government. I guess the short answer, Justice Ginsburg, is I don't think that there's a one-size-fits-all answer. But the other part of your question is, are we taking the position that even if substantive obligations run against the United States, there still wouldn't be a remedy, at least a remedy in damages, against the United States? And the answer to that is yes. But that's not at all atypical under this Court's sovereign immunity jurisprudence. And it's not at all atypical for Congress to have fashioned a scheme that runs in that way. In the Privacy Act, at least as one example, where in the Privacy Act, which applies to the government and the government alone, there are certain obligations that the government has to comply with in that statute. But Congress was very careful to cabin the circumstances in which the government would be subject to liability in money damages. Scalia, your argument is not just a straightforward, specific, governs-the-general argument. I mean, that would be the case if the other statute, which the plaintiff is trying to run around through the Tucker Act, specifically clearly prohibits suit against the government. Then you would say, you know, the specific governs the general, even though the Tucker Act permits it, this statute prohibits it. But you're saying this other statute here does not really prohibit it. You're just saying this other statute does not permit it under our usual rules about waiver of sovereign immunity being strictly construed. So, you know, it's a difference. It's an odd sort of a specific governs-the-general argument. I think with respect, Justice Scalia, I think that's a distinction that ultimately doesn't make a difference in the context of this case. And the prior cases in which this Court has applied the specific over-the-general canon in related contexts, it's true that the statutes in some situations contemplated liability against the United States. But it had that statute would have certain limitations. And I'm thinking, for example, of Hink, of Erika, of Brown v. General Services Administration's cases like that, and Sheehan. And what the Court said was where a statute provides for liability against the United States in certain situations, you don't look to a different statute, the Tucker Act, to circumvent those kinds of limitations. Scalia. But that's because the negative implication of that statute is — affirms that there is no liability of the United States, okay? But here you don't have — you don't have that negative implication at all, do you? Well, I guess I don't think we need to have that negative implication to that full extent in order to invoke the specific versus the general canon, because the question at the end of the day is what did Congress intend? And where Congress enacts a specific remedial scheme that sets out the extent to which liability will be imposed under, in this case, the Fair Credit Reporting Act, it stands to reason that Congress would have expected courts to look to the remedial scheme that it established to determine the meets and bounds of liability, not some other general default provision. And therefore, in that sense, the specific remedial scheme that's in the statute should control over some other general scheme that Congress might well not have had in mind at all when it set forward the terms under which claims can be brought under FCRA. Kagan How specific does the other statute have to be? Suppose there were another statute that just said any party can bring suit to enforce any rights against any persons under this statute. Would you be making the same argument? If the statute were that general? Yeah. That's all the statute says. It just says any party can bring suit to enforce rights under this statute. So there's not a lot of hoopla and a lot of detail about a remedial scheme. Would you still say that this controls over the Tucker Act? I think I would, because I think in that context, Congress would have made a determination on the scope of liability for claims under that statute. It would have given thought to that issue and it would have set forth in a very general provision the meets and bounds of the liability. And Congress, I think, in that context, wouldn't have expected anyone to look to the Tucker Act, because Congress gave no indication that it was thinking about the Tucker Act. Now, in Your Honor's hypothetical, if you had a statute that spoke in those kinds of general terms, of course, we'd have, I think, a very good argument that there would have been no contemplation of a waiver of sovereign immunity. So we would strongly resist the notion that the United States might fall within the compass of that general provision. But on the question of whether you'd look to that general provision as opposed to the Tucker Act, I think you would look to that general provision, because Congress, in the context of enacting that statute, told everybody, we're defining the extent to which liability can be asserted in court by reference to this general provision. This is where you ought to look, not somewhere else. Now, one other ism. Scalia, isn't really — doesn't the question come down to, as you're putting it, whether the Tucker Act eliminates for all other statutes the presumption against liability on the part of the United States? It does. I think it does, and I think that's a quite breathtaking proposition and not one that Congress would have intended by virtue of the Tucker Act. Well, then it's really the specific governing the general, but the other way around, right? The Tucker Act discusses specifically the liability, the sovereign immunity of the United States, and if it just — the statute just generally doesn't address it, then the Tucker Act is the specific one and the other statute is the general one. Well, it would be hard to square that understanding with the way — with the series of this Court's cases that apply the specific versus general canon, because I think the same argument could have been made in Brown v. General Services Administration, in Erika, in Hink, that if you thought that this subject— You went under this argument, too, right? I'm sorry? You went under this argument, too, and it just seems to me that it's not quite right to say that FCRA does not specifically address the liability of the United States. Right. The Tucker Act does. So the Tucker Act is the one that's specific and it applies instead of the general language in the — in FCRA. It — well, you can look at it that way, Mr. Chief Justice. I guess my only — my only response— In which case you would lose, not win. Well, that's the question, because it depends on— Well, you better resist it. It depends on how you construe the Tucker Act. I mean, I think — I think Your Honor is correctly construing the Tucker Act's waiver of sovereign immunity only to apply to a certain limited subset of acts of Congress. And if — if you construed it in a sufficiently limited way, I suppose we could live with that result. But I think the better way to approach the question is to look at the particular remedial scheme that Congress enacted in the scope of the statute itself. And for purposes of questions of sovereign immunity, you'd look to that particular remedial scheme and ask the age-old question countenanced by this Court's decisions of whether there's an unequivocal expression of an intent to waive sovereign immunity in the scope of that statute itself. So what is covered by the Tucker Act? I mean, every — every basis for suit against the government, every claim that the government owes you money, rests upon some statutory text, doesn't it? There — well, it's— So what— Not claims in contracts, for example. Obviously, if there's an express contract with the United States, I don't know that that comes under a statute necessarily. Okay. Express contracts with the United States. Anything else? The Just Compensation Clause, that doesn't come under a statute. It comes under the Constitution, but the Tucker Act can be used. Okay. But anything that comes under a statute, you would look to the — to the other statute to see whether there is sovereign immunity under that statute, and if there is under that statute, then the Tucker Act does not overcome it. If that statute, at least, if that statute has its own remedial scheme, then you'd look to the remedial scheme in that statute. But I think this is where I started off with Justice Sotomayor. That's what I started with. Is there anything left to the Tucker Act? Right. And I think there is. I think the statutes like the one that this Court had before it and White Mountain Apache Tribe are ones. Another example that I could give the Court is there's a statute that dealt with payment of compensation to prisoners of war. This was — this is a statute that was at issue in Bell v. United States. I think it's cited in footnote 42 of the Court's opinion in Bowen v. Massachusetts. But that statute specifically set forth that compensation would be owed to prison of prisoners of war held in captivity. That statute did not have its own remedial scheme. Its substantive obligation ran against the United States and the United States alone by nature. And the Tucker Act, I think, in that context would step in to supply a waiver of sovereign immunity and jurisdiction in the court of Federal claims. And the reason is that that statute has the two predicate conditions that we think have to be met in order to even raise the question whether the Tucker Act steps in. Sotomayor, so the new rule is if a statute's written to impose obligations only on the government, then the Tucker Act is implicated immediately. If the rule says the government and any party who contracts with it, a Medicaid provider, must do X, Y, and Z, and the government and the Medicaid provider have the burdens of accomplishing Y, unless there's an express waiver of sovereign immunity, the Tucker Act doesn't come into play. That's your position. I think that's right, Your Honor, but I'd qualify it in one respect, which is that if the statute contains its own remedial scheme, that's an independent reason for not looking at the Tucker Act. Well, you're not going to suggest that if the scheme I just described says X, Y, and Z have to do all these things, and someone who to whom they owe that obligation can sue the Medicaid provider, for example, for breach of that obligation, presumably, I'm putting in a lot of hypotheticals given our case law, but you're saying they can't sue the government under the Tucker Act. Right. Unless there's an express waiver. That's right. I think you would look to the question of whether there's been a sufficiently express waiver in the terms of the statute itself, which is the traditional test that this Court has applied. How about if a statute has no remedial provision at all? It just lists a set of legal obligations, but it's a generally applicable statute. It doesn't concern only the United States. Would your argument still apply that the Tucker Act has no force? Yes, it would. I think it's easier where you have a remedial scheme, obviously, but I think it's also the case that where the substantive obligation is a generally applicable one and doesn't run against the United States alone, you'd still, I think, want to Your argument really isn't about another statute having a remedial scheme. In the briefs, you presented as another statute has a remedial scheme. Of course, you should look to that more particular remedial scheme. But you would take the argument and say even if the other statute doesn't have a remedial scheme, we don't look to the Tucker Act. We just think of the Tucker Act as having a limitation that's not in the Tucker Act's test, text, in order to make the Tucker Act consistent with everything we thought we knew about principles of sovereign immunity. That's true, but I guess you don't have to reach the question of whether the Tucker Act applies where the statute doesn't have its own remedial scheme, obviously, in this case, because FCRA does have its own remedial scheme. Our argument would still apply. And on the question of whether we're reading the Tucker Act in one particular way to a subset of acts of Congress, I guess one point I'd make is that the money mandating test that this Court has always applied where the Tucker Act does apply already presupposes that it doesn't apply to just any act of Congress, because the act of Congress has to be a money mandating one. Say it again. I lost it. Give me that last sentence again. The last sentence, the last thought at least, maybe I should try to rephrase it. The last thought is that this Court's jurisprudence already presupposes that the Tucker Act doesn't apply to every act of Congress, because the Court's jurisprudence requires that the act of Congress be money mandating. So we're already in a zone in which the Tucker Act's reference to act of Congress doesn't literally extend to every conceivable act of Congress. It only extends to certain acts of Congress. Is this a money mandated statute? If you didn't have, that's — I guess if you didn't have the remedial scheme. We don't get to that question, Justice Kennedy, because you only get to the money mandating question if there is not a remedial scheme in the text of the statute itself and the substantive obligation runs against the United States and the United States alone, which this one doesn't because it's generally applicable. And it's hard to conceive of that question in the abstract, because the question is whether the statute is money mandating in that it specifically contemplates the payment of money by the United States. And precisely because the statute is generally applicable, I think we would say that under this statute it's not money mandating, because it's not money mandating in that it doesn't contemplate payment by the United States with relevant specificity because the substantive obligation is generally applicable. You only get to that question in a context like White Mountain Apache Tribe or Mitchell 2, where the substantive obligation runs against the United States and the United States has a remedial scheme embedded within the statute itself. And then you ask the question whether, is that kind of substantive obligation that runs against the United States, is that one that's naturally conceived of as money mandating? And on that, I think you'd look at a couple of considerations consistent with this Court's decisions. One is, is the obligation one that necessarily deals with compensation? So, for example, the statute I was referring to earlier that has to do with compensation for imprisoned prisoners of war, that one naturally has to do with compensation so it might be money mandating. In White Mountain Apache Tribe and the other trust cases that arise under the Indian Tucker Act, the Court concluded that because background principles of trust law would necessarily contemplate the payment of money, that those statutes are money mandating. Sotomayor, the only question is that the statute awards damages for breach of the obligation. So it's money mandating. The issue is not whether it's money mandating. The question is, who's it mandating?  Sotomayor, it's not the statute that's mandating the payment of damages. It expressly awards. But I think the money mandating test, Justice Sotomayor, is whether it contemplates the payment of damages by the United States. And I guess that's why I'm having a hard time addressing that question in the abstract, because there's a predicate condition that hasn't been satisfied. That question only naturally arises where the substantive obligation runs against the United States and the United States alone. I think precisely for the reason that Your Honor says, where the substantive obligation is not money mandating in the relevant sense. Sotomayor, it is there is some difficulty with your argument, which is, going back to my simple hypothetical, government and Medicaid ex-providers have to do X, Y, and Z. If those persons being defined as government and providers doesn't do what they have to do, they have to pay these damages. I mean, that's pretty clear. Well, I'll grant you, Justice Sotomayor, that that hypo is more difficult than this case, because although I would construe that to be generally applicable, it does talk about the government. It specifically references the government, and I think, by Your Honor's hypothetical, the United States alone. It's not an undifferentiated reference to persons, which is what you have in FCRA. I still think I would call that generally applicable, such that the Tucker Act wouldn't come into play, but I don't deny that it would be a closer case than what you have here. If the Court has no further questions, I would like to reserve the balance of my time. Thank you, Counsel. Mr. Jacobs. Mr. Chief Justice, and may it please the Court, if I may, I should like to begin with Justice Kennedy's question. Is this a money mandating statute? Section 1681A defines persons, and it defines persons as inter alia any government or government body or agency. That, it would seem to me, would be extraordinarily clear that the government is subject to this Act and subject to money mandating. Well, you wouldn't need the Tucker Act then, would you? We could. We believe we should be able to recover simply under FCRA itself. Yes, Your Honor. But if there were any question as to whether the government is in fact covered, that would seem to me to be answered by 1681Bb4. So are you splitting your claim? I mean, if you have both a cause of action under FCRA and under the Tucker Act, the one has to go to the Federal Circuit and the other elsewhere, or the court of claims, and then the Federal Circuit, what do you do? Your Honor, that was the subject of some debate in the court below. We took the appeal to the Federal Circuit because the claim was based in whole or in part on the Tucker Act. You also claimed under FCRA, under the statute, right? Yes, we do, Your Honor. Okay. But why do you care? I mean, you're in the Northern District of Illinois. You bring a case under this Act. I guess you lost because you wanted to appeal. And so what is the big deal? Appeal to the Seventh Circuit. Who cares? Why do you care? Which circuit you go to? Is it you think, well, why do you care? We don't particularly care, Your Honor, but we believe that we are required by the statute to appeal to the Federal Circuit if the claim is based in whole or in part on the Tucker Act. I guess you and the government could have stipulated, we agree, it goes to the Seventh Circuit, nobody would have opposed you on that. I don't know, Your Honor. If this case is about you want to go to the Federal Circuit, they want you to go to the Seventh Circuit. Right. Okay. And in 1681b-b-4, the statute said that if you go to the Seventh Circuit, you don't get any money, right? Because if you're getting money from the United States, don't you have to go to the court of claims in a case like this? I don't believe so, Your Honor. No? I mean, 1681p says you can sue either in district court or any other court of competent jurisdiction. And in that regard, there's been a lot of talk about the remedial scheme. And with respect, Your Honor, I would submit that this is not some reticulated remedial scheme where you have to file a claim and have a hearing and those kinds of things where this Court has enforced that against people. Here, it's just a typical statute that says you have to do A, B, and C, and if you don't, you can be sued in Federal court. Do you know any other statutes, Your Honor? Offhand, I can't think of any, but maybe you know some, in which you can get money out of the United States but don't have to go through the court of claims in the Federal Circuit. What other statutes are there? And if there are none, the reason I ask the question, it becomes less and less plausible that FCRA was meant to allow suit against the Federal Government. The Privacy Act, Your Honor, allows you to sue the government in the district court. For money damages. I believe so, Your Honor. Not in tort. This seems an awful lot like a tort. Or tell me why it isn't. I mean, what you're saying is there's a statute that says you can't print more than the last five digits of a card or the date, the expiration date. And they did both. And you want to say or means one or the other. It doesn't mean and or. That's what the case is about fundamentally, right? The case is about printing the expiration date. Okay. That's the one. Can you do and or or? All right. Got it. Now, if you print, in your view of it, they printed too much about a person's credit card. Yes. It sounds like an sort of like an invasion of privacy, which is normally a tort. It is like it, but I believe this Court's jurisprudence has been for a long while now, at least since Jacobs and I would submit even earlier, Dooley onward, that it doesn't make any difference whether if you're suing under a statute of the United States or a contract or anything else, if there's any element of tort in it, it doesn't matter. What do you mean? You can sue for a tort? In other words, if the statute were to say if Smith, a government employee, assaults a person, he gets damages, Federal statute, and he brings a claim in the Court of Claims of the United States, I don't know this law, I'm asking, I'm not arguing, the plaintiff sues the United States for assault, and you're saying that they can bring that in the Court of Claims because it's a statute? I don't know how this law works. I just read that, and I know the language doesn't totally tell you. It's about liquid, illiquid. I didn't get that part exactly, but as I've understood it, you can't bring a tort suit in the Court of Claims. Now, that's what I would like you to elaborate, because this sounds rather like a tort suit, not sort of. That's why I'm asking. As no doubt intended, Your Honor posed a very difficult question. I would submit that if the statute says that you may not do A, B, and C, that you could then sue in the Court of Claims. Even if it says you may not assault someone? Yes. Even though it's traditionally you could think of that as a tort, I believe that's this Court's jurisprudence. And the case I should look at to show that is what? That's all right. I think Dooley, I think, Your Honor, in 1901 said, regardless of whether the exactions of taxes were tortious or not, we think this case is within one of the first class of cases specified in the Tucker Act of claims based upon a law of Congress. Roberts, your argument, your answer is a little more complicated, because the statute doesn't say tort claims. It says claims sounding in tort, which means cases that aren't torts but are like torts. And it seems to me the case you have here is like tort, an invasion of privacy or something like that. Your Honor, I believe, again, that this Court has not interpreted the cases that way. There is a debate as to whether a breach of fiduciary duty is a tort or something else, and yet this Court in White Mountain and other cases has not found that to be a bar. Sotomayor says that that's a fiduciary – that's a trust breach, which has been regarded as different than a tort. That's what the government says, but it is also a breach of fiduciary duty, and that is often regarded as a tort, Your Honor.  I'm sorry. Ginsburg. Whether you think Congress ever honed in on the issue whether the United States, given the multitude of financial transactions in which it engages, ever thought that sovereign immunity would be waived. I mean, if you're right about this, the consequences are enormous for the Federal Fisk, and we – the statute developed in a peculiar way. First, there was the definition of person when there was no civil liability, and then some years later, the prohibition of having both the credit card number and the expiration date. In all of it, is there any hint that Congress envisioned the waiver of sovereign immunity in the Fair Credit Reporting Act? Your Honor, I would submit yes. There is no explicit – to my knowledge, there is no explicit reference in the congressional record to whether this was going to impact the government or not. However, what they talked about was the almost epidemic proportion of identity theft going on, and in response to that, this bill was passed. Knowing that the government is one of the largest issuers of credit card receipts, one would have to wonder why they would want to exclude the government in terms of protecting the public. That would not make sense. It doesn't make any difference where the credit card is. Scalia, for the same reason that you have the principle of sovereign immunity. They're perfectly willing to subject corporations to immense liability, but they're not willing to subject the Federal Government to immense liability. That's what the doctrine of sovereign immunity is all about, isn't it? That's exactly correct, Your Honor, but that's why I said in terms of protecting the public, you wouldn't want to exclude such a large – such a large thing. And when they wanted to protect the government, as they did in 1681BB4, when they wanted to exclude them, they explicitly did so. The next year. The import of the government's argument is that if your interpretation governed, we would be facing really a quite massive change in the law of sovereign immunity as we've known it until this time. So Congress decides to pass a statute, and the statute has a cause of action in it. And the drafters say to each other, do we have to say that the government retains sovereign immunity? And everybody says, no, the rules are that if we say nothing at all, the government does retain sovereign immunity. Now, under your world, the next time Congress passes such a statute and that question comes up, you would say, oh, we have to say that the government waives – retains its sovereign immunity, because if we don't say that, somebody's going to bring an action under the Tucker Act. So for every statute, both the ones that have been written under the old rules and the new ones to come, we've completely flipped the presumption. Now Congress is going to have to say when it wants to retain sovereign immunity, and if it doesn't, if it doesn't, the Tucker Act applies and you get to be in court. With respect, Justice Kagan, I don't think that's true at all. They went out of their way to define person to include the government. And that's significant in this respect, Your Honor. We cite the Moore case, Moore v. the Department of Agriculture, an almost identically worded statute where it said, a government. I don't think that quite answers the question. That's a question about what FCRA means and whether under any standard, whether the fairly arguable standard or the express standard, you should win. And that's a different question. The question is, what standard are we going to hold you to? Are we going to say all you need to show is that it's fairly arguable, or are we going to say, no, unless there's an express statement that the government has waived its sovereign immunity, the government retains it? And as to that, you're asking us to flip the presumption from now on. I don't believe so, Your Honor. I think they went out of their way to say this applies. It's not some general statute that says if a credit card is printed improperly. When the definition of persons was put into the statute, there was no civil liability. Isn't that right? So they didn't, they could not have been thinking about civil liability. Well, when they amended FCRA in 1996 to add the liability, to change the word from credit reporting agency to person, I would submit that had to be a conscious step. And proof of that is found, I think, in two subsequent amendments, one the next year, 1681BB4, saying, but this does not apply to the government if there's a national security issue. And then the government pointed to 1681U sub I that talked about if the FBI improperly disclosed information, what liability it would have. Now, in the appendix to the government's brief, it stops there. But in the government's petition for cert at page 78A, it also has 1681UL, which says any other provision of this section, notwithstanding, people are limited to this remedy against the government. Why would Congress say that if there were not other liability for Congress, for the United States? So I believe the Congress was about as clear as it could be that it knew this applied to the United States, and when it wanted to carve something out, it did so twice. Now, I really haven't followed this argument. You say L shows that they had liability by the government in mind? Yes, Your Honor. I believe that. I mean, it would apply to everybody, notwithstanding any other provision. The remedies and sanctions set forth in this section show to be only judicial remedies and sanctions, a violation of this section. I believe, Your Honor, that. Why does that bear upon whether the United States is liable or not? This U only applies to the United States, the FBI. 1681U is explicitly passed with regard to the FBI getting information and improperly disclosing it. I see. And this would say, notwithstanding any other provisions, and it wouldn't do that if there weren't other provisions applicable. And that, Your Honor, takes me back to the Moore case, which we discussed many times in our brief, a similarly almost identical statute, the Equal Credit Opportunity Act. The Truth in Lending Act, the Equal Credit Opportunity Act, and FECRA were all part of the Consumer Credit Protection Act. Different parts of it. And the Equal Credit Opportunity Act had the same, almost the same definition with one word different of importance. And then the Fifth Circuit said there is no exception in here. Once it says that for any person, it doesn't have an exception for the United States. Unlike the Truth in Lending Act, which had a specific provision exempting the United States. This is identical except for one word different. This says, any, the most emphatic word it could use. The other two statutes say, A, government or government entity. This statute says, any government or government entity. And the United States makes no response to that interpretation that is throughout our judicial system, and indeed, it would be difficult to because throughout the United States now, the United States no longer even attempts to argue that ACOA does not provide for waiver of sovereign immunity. Scalia. If you are right about that, I guess we could write a very narrow opinion saying the Tucker Act applies where there is a cause of action under the original statute anyway, in which case we would not have made much new law, would we? Thank you. Well, I'm hoping we won't make much new law, Your Honor, because I believe this is consistent with this Court's longstanding jurisprudence. And indeed, the cases where the Court says, no, we are not going to let you bring this under the Tucker Act, is where the party is trying to escape, to get around a limitation in the substantive act, where they are trying to avoid a statute of limitations, avoid the requirement to file a claim, as in Elkhorn Mining, as to get around, get away from a court that is trying to get around a limitation as in Hink, where it says the tax court will have jurisdiction of this, and then they are trying to get around. That's not going on here. We're — the plaintiff in this case is not trying to evade any congressional intent or statutory provision of FECRA. And the government points to nothing, no violence that would be done to FECRA by allowing this. The reason that this statute was passed was to protect consumers. The Congress was clear that if any government violates the statute, it has this liability. I do not know how you could have a clearer money-mandating statute. And, Justice Scalia, you asked, well, would we just win under the statute? My answer to that would be unequivocally, yes, we should. It's an unequivocal waiver. And that's the irony here. I think you have a more unequivocal waiver in this statute than you do almost any other where the court has found, yes, that's a fair inference of a money-mandating statute in a situation. Breyer. Well, I mean, a lot of these provisions are technical, like the one I think is fairly technical, the one you're talking about. The government, it provides for treble damages, does it? No. Minimum damage, punitive damages, a fairly lengthy statute of limitations compared to the court of claims. Two years. Two years. They have six in the other. Two years or five years. Two years from discovery, five years. My impression was there are several differences. And normally these things, at least arguably, are not appropriate against the government, because the government, when it knows the law, will follow it, we hope. And therefore, you don't need brow-beating mechanisms to make sure they follow it once it's clarified. So therefore, I mean, I can imagine arguments. At the same time, there are differences between the relief scheme in this statute and the normal one you have in the court of claims. And they are arguing that that means that they didn't want this Tucker Act and these other things to apply. I just want to know what your reply is to that. They are different. They are different, Your Honor, but with respect, I see nothing about saying this is what you must do, and if you don't do, this is what you have to pay. And I see nothing unusual about saying that can be in the court of claims, that that's a Tucker Act claim. That doesn't seem — that's not some reticulated statute unlike the Civil Service Review Act or something like that, where you have to do all these steps, have this hearing first, have that hearing. Sotomayor So are you happy with the circuit's suggestion that the specific does govern the general insofar as it will adopt whatever FERCA's limitations are? And into its own processes? Yes. Your position is that's perfectly okay? Yes. And I think that is consistent with this Court's jurisprudence. Roberts No, it does seem, I mean, Justice Breyer's point, it does seem a little ad hoc. In other words, they don't fit quite together, and your answer is, well, we'll just take whatever, you know, whatever we have to, to make it fit, if we'll go under the least imposing on the government. It suggests that Congress did not expect the Tucker Act to apply if you've got to change the remedial provisions in FCRA to get it to fit under the Tucker Act. Well, Your Honor, if I understand your question correctly, I don't believe I agree with the premise. This Court has consistently said, as Your Honor said, that the Tucker Act only provides an outer limit for filing, but will use the shorter time period. In Ruckelshaus v. Monsanto, the Court said, no, no, no, you've got to do it, because Monsanto didn't want there to be a Tucker Act claim. It wanted to be able to argue, we have no relief available to us for having to disclose the components of our insecticides, and they want to argue there's no relief available to us. And this Court said, no, you've got a Tucker Act claim, you do have relief available to you. And the Court said, yeah, you didn't file a claim. There's a procedure where you could file a claim saying, this is a trade secret and the — you then would have arbitration, and the Court said, you haven't done that, go ahead and do that and then let's see what happens. But you've got a Tucker Act claim. And incidentally, in that regard, in Ruckelshaus v. Monsanto, the Court discussed extensively the restatement of torts, as to whether a trade secret — is this a trade secret under the restatement of torts, and then went ahead and said, no, you've got a Tucker Act claim. Breyer. So is — are you also saying, VCRA, the underlying statute, clearly waives sovereign immunity, so we don't have to worry about whether the standard's a weak standard or a tough standard, doesn't matter, we win anyway? Absolutely. So what you want us to say is, okay, we'll apply the tough standard. There's still — there's still sovereign immunity is waived in VCRA. And since sovereign immunity is clearly waived there, then you can bring this under the Tucker Act, and the only differences are the remedial schemes are slightly different, but that doesn't matter. Am I correctly stating what you're now telling us? I'm telling Your Honor that we win under such a test. We don't believe such a test is called for. But if such a test were used, we still win, because you do have such a clear waiver. One of the purposes of the Tucker Act was to provide a remedy where none existed, to get rid of the private bills. What's wrong with the government's basic proposition, which is where you have a remedy, you have to pursue that remedy? And I think that, at bottom, that's their argument. What's wrong with that scheme? Instead of permitting two remedies with potentially conflicting commands, whether it's on the amount of damages or the nature of the recovery or the statute of limitations, why isn't their vision of what the Tucker — role the Tucker Act should play, one that should be given voice, one that should be followed? Your Honor, I would submit that that would be a substantial change in this Court's jurisprudence. Congress passed the Tucker Act, and this Court for years now has said if you meet these requirements, you may sue under the Tucker Act. Scalia. The government doesn't concede that you have a cause of action under VICRA at all. They say just the opposite. And so what I find peculiar is that there should be two causes of action for the same thing. You can proceed either under VICRA or under the Tucker Act or both. I mean, that's very strange to me. It seems to me one or the other. And it would normally be the specific governing the general. So if you say there is one under VICRA, why do we need the Tucker Act? Your Honor, the Tucker Act is made available by Congress. Could we proceed only under VICRA? Yes, we could. But the Tucker Act is available. The statute 1295 says what it says, and we have appealed to the court of appeals. But there is you have any other case where you somebody has been allowed to proceed under the Tucker Act where there is clear ability to proceed under some other statute? Your Honor, I cannot name you a case off the top of my head. As I said, I believe the Privacy Act allows you to do either. The all the cases where a Tucker Act remedy has been denied, as I've said, are where a person was trying to evade a limitation of the substantive act. That's not this case. This case is foursquare within the Court's jurisprudence. The government argues now for a new, and it's not clear to me exactly what test, but it's a limiting one. It would cut back the Tucker Act. But, Mr. Jacobs, you are trying to evade a certain kind of limitation. The limitation that you are trying to evade is the rule that waivers of sovereign immunity have to be express, and that's the rule that you are trying to evade by going under the Tucker Act. No, Your Honor. We believe, and we maintain throughout, that we do have an express waiver, 1681a. But then you wouldn't need to go under the Tucker Act. The difference between going under the Tucker Act and going under the statute is the difference between, you know, what standard is a court going to hold you to, to decide whether there's been a waiver of sovereign immunity? The standard, I would submit, Your Honor, is that the Tucker Act is always available unless the substantive statute provides a limitation on that ability, either saying it shall be just — it shall be litigated in the tax court, it can only be litigated if it is preceded by a claim, an administrative claim, some limitation like that. If there is something that says it has to be in another forum, then you would be evading it. But otherwise, the Tucker Act remedy is available, and it's appropriate. And it's precisely, I would submit, that what do you do — You can finish your sentence. All right. What do you do when you say, eh, we think this is, you know, is this express enough? And that's the Tucker Act saying, well, it's clearly a fair inference. Thank you, counsel. Thank you, Your Honor. Mr. Srinivasan, you have three minutes left. Mr. Srinivasan, I hate to eat up any of your time, but do you acknowledge that there are other statutes under which a person can proceed either under the statute or under the Tucker Act? No. I'm not aware of that situation. And I think that's why you look to this remedial provision that Congress enacted in the Peace and Balance. What about the Privacy Act? The Privacy Act has its own remedial mechanism within it. So you'd say you either proceed under the Privacy Act and recover the error, or you don't proceed at all. And what about, what is it, FSLA was the other one? Well, FLSA is a bit complicated for the reasons I was adverting to earlier. It's — this Court has never confronted the question of how exactly you go forward under the FLSA. And I think because of the ambiguity in the courts to which the FLSA refers, for the reasons I was discussing with Justice Sotomayor earlier, I think you could see that statute as incorporating the Tucker Act itself. But that would be something that Congress did. What about UL? UL that your friend raised? UI, I think there's several answers to UI. First of all, I'm not sure which way that cuts, because the fact that it is not UL and maybe UI, but U, I'm not sure which way that cuts, because on one hand, the fact that Congress specifically provided for the United States to be liable in certain situations, I think, cuts in favor of our understanding, not against it. But there's a more fundamental point about the argument that my friend makes on the other side, which is that that statute was enacted, I think, before the civil remedies provisions were expanded to encompass all persons. So it's hard to conclude that notwithstanding any other provision would have referred to something that came along later. Now, I have two points that I'd like to make in rebuttal, one of which there's been some questions today about which is the specific statute and which is the general statute. Now, one, I think, clear indication that the specific statute for present purposes should be FCRA is to look at what the plaintiffs allege. The plaintiffs are bringing a FCRA claim, and there's no mistake about that, because the plaintiffs seek the FCRA advantage of statutory damages of at least $100. And so they're grounding their claim in the FCRA cause of action, and I think, therefore, you should look at FCRA to determine whether the government is liable. And you don't have a situation in which you can mix and match under both. You should look to FCRA to determine whether there's been a clear and express waiver of sovereign immunity. The other point I'd like to discuss is something that references something Justice Breyer was referring to earlier, which is even if there were some universe in which you could contemplate a hybridization where you apply the Tucker Act, even though there's a cause of action already in the statute, you wouldn't do so in the context of this case because there are clear indications that Congress wouldn't have contemplated a resort to the Tucker Act. The Tucker Act doesn't apply to torts. This claim is a tort claim. We know this because the Court in Safeco a few terms ago, this is at 551 U.S. 69, specifically referred to the restatement of torts as a means of interpreting the term willfulness, which is the linchpin for the claim here. I see my time has expired. Roberts. Thank you, counsel. The case is submitted.